**[Cite as *L.H. v. M.D.*, 2026-Ohio-2501.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

[L.H.],                                                                              :

      Petitioner-Appellee,                         :

                                       No. 25AP-887

v.                                                                                   :        (C.P.C. No. 25DV-1916)

[M.D.],                                                                         :        (REGULAR CALENDAR)

      Respondent-Appellant.                       :

---

D E C I S I O N

Rendered on June 30, 2026

---

**On brief:** *Samuel H. Shamansky Co, L.P.A., Samuel H. Shamansky, Donald L. Regensburger, Ashton C. Gaitanos,* and *Katherine R. Clark*, for appellant. **Argued:** *Donald L. Regensburger.*

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

EDELSTEIN, J.

{¶ 1} Respondent-appellant, M.D., ("Respondent") appeals from the October 7, 2025 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations granting the petition of petitioner-appellee, L.H., ("Petitioner") for a domestic violence civil protection order ("DVCPO") pursuant to R.C. 3113.31. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2} Respondent and Petitioner are married[1] and have four children together. On October 1, 2025, Petitioner filed a petition for a DVCPO against Respondent on behalf of

---

[1] Petitioner filed a complaint for divorce on January 15, 2026 in Franklin County Court of Common Pleas case No. 26DR-0131. That matter remains pending.

herself and her four minor children (born in 2013, 2019, 2021, and 2024). After conducting an ex parte hearing on Petitioner's request for a DVCPO that same day, the trial court issued an ex parte temporary protection order prohibiting Respondent from having any contact with Petitioner except during exchanges of or in communications about their minor children. The court did not grant the requested ex parte order as to the four children. The trial court scheduled the matter for a full hearing on October 6, 2025. Law enforcement served Respondent with notice of the ex parte protection order and the scheduled hearing on October 1, 2025.

{¶ 3} On October 6, 2025, Petitioner, pro se, and Respondent, with counsel, appeared for a two-day hearing on Petitioner's petition for a protection order. As described more fully below, both parties testified at the hearing. At the conclusion of the hearing, the trial court issued a DVCPO against Respondent for the protection of Petitioner, the terms of which are to remain in effect until January 31, 2027. The court memorialized the terms and conditions of the DVCPO in its October 7, 2025 judgment.

{¶ 4} Respondent timely appealed from that judgment, and now asserts the following assignment of error for our review:

> THE TRIAL COURT ERRED BY GRANTING [PETITIONER'S] PETITION FOR A DOMESTIC VIOLENCE CIVIL PROTECTION ORDER IN THE ABSENCE OF SUFFICIENT, CREDIBLE EVIDENCE THAT [MR. DOCKERY] POSED AN IMMINENT AND PRESENT DANGER TO [PETITIONER].

## II. LEGAL ANALYSIS

### A. Applicable Law and Standard of Review

{¶ 5} Pursuant to R.C. 3113.31, a domestic relations court may issue a DVCPO under Civ.R. 65.1 and R.C. 3113.31 if the court finds the petitioner has shown by a preponderance of the evidence that petitioner and/or petitioner's family or household members are in danger of domestic violence. *See, e.g., Felton v. Felton*, 79 Ohio St.3d 34, 42 (1997). " 'The "statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." ' " *T.S. v. B.S.*, 2018-Ohio-4987, ¶ 18 (10th Dist.), quoting *J.R. v. E.H.*, 2017-

Ohio-516, ¶ 15 (10th Dist.), quoting *Thomas v. Thomas*, 44 Ohio App.3d 6, 8 (10th Dist. 1998).

{¶ 6} R.C. 3113.31(A)(1)(a) defines "domestic violence" subject to a DVCPO to include: attempting to cause or recklessly causing bodily injury to a family or household member; placing a family or household member, by the threat of force, in fear of imminent serious physical harm[2]; and committing the offense of menacing by stalking against a family or household member. R.C. 3113.31(A)(1)(a). R.C. 2903.211(A), the menacing by stalking statute, prohibits a person from engaging in a pattern of conduct that knowingly causes another person to believe the offender will cause physical harm[3] or mental distress to them. R.C. 2903.211(A). A court may issue a DVCPO based on evidence of menacing by stalking without proof of an act that placed "another person by the threat of force in fear of imminent serious physical harm." *See* R.C. 3113.31(A)(1)(a)(ii).

{¶ 7} The decision to grant or deny a protection order is within a trial court's discretion and our standard of review is abuse of discretion. *A.A. v. M.G.S.*, 2020-Ohio-3469, ¶ 11 (10th Dist.), citing *J.W. v. D.W.*, 2019-Ohio-4018, ¶ 15 (10th Dist.). An abuse of discretion occurs when the trial court's decision was unreasonable, arbitrary, or unconscionable. *See, e.g., State v. Weaver*, 2022-Ohio-4371, ¶ 24, quoting *State v. Gondor*, 2006-Ohio-6679, ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "A court

---

[2] Although "serious physical harm" is not defined in Chapter 3113 of the Ohio Revised Code, we have applied the definition of the phrase contained in R.C. 2901.01 in DVCPO cases. *See D.D. v. B.B.*, 2022-Ohio-1032, ¶ 25 (10th Dist.). "Serious physical harm to persons" is defined in R.C. 2901.01(A)(5) to mean any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

[3] "Physical harm" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3)

abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19.

{¶ 8} "A decision is unreasonable if there is no sound reasoning process that would support the decision." (Internal quotations omitted.) *Fernando v. Fernando*, 2017-Ohio-9323, ¶ 7 (10th Dist.), quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). A decision is arbitrary if it is made "without consideration of or regard for facts [or] circumstances." (Internal quotations omitted.) *State v. Hill*, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed. 2014). A decision may also be arbitrary if it lacks an adequate determining principle and is not governed by any fixed rules or standards. *See Beasley* at ¶ 12, citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's Law Dictionary* 96 (5th Ed. 1979). *See also Hackett* at ¶ 19. A decision is unconscionable if it "affronts the sense of justice, decency, or reasonableness." *Fernando* at ¶ 7, citing *Porter, Wright, Morris & Arthur, L.L.P. v. Frutta Del Mondo, Ltd.*, 2008-Ohio-3567, ¶ 11 (10th Dist.). Further, "[a]n abuse of discretion may also be found where a trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' " *State v. Harris*, 2023-Ohio-3994, ¶ 73 (10th Dist.), quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.), citing *Berger v. Mayfield Hts.*, 265 F.3d 399, 402 (6th Cir. 2001). *See also Bellamy v. Montgomery*, 2012-Ohio-4304, ¶ 7 (10th Dist.).

{¶ 9} A trial court's decision to grant a DVCPO is not unreasonable where it is supported by competent, credible evidence to a support a finding that the respondent had engaged in acts or threats of domestic violence. *See, e.g.*, *Downs v. Strouse*, 2006-Ohio-505, ¶ 10 (10th Dist.). *Compare Abuhamda-Sliman v. Sliman*, 2005-Ohio-2836, ¶ 8-10 (8th Dist.) (recognizing inconsistency among appellate courts regarding the appropriate standard of review). Judgments supported by competent, credible evidence going to all the material elements of the case may not be reversed as being against the manifest weight of the evidence. *Downs* at ¶ 10, citing *C.E. Morris Co. v. Foley Constr. Co.* 54 Ohio St.2d 279 (1978), syllabus. Further, "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence

submitted before the trial court." *Seasons Coal Co. v. Cleveland, Inc.*, 10 Ohio St.3d 77, 81 (1984). To that end, we have recognized that, where "evidence is susceptible to more than one interpretation, an appellate court must construe it consistently with the trial court's judgment." *Downs* at ¶ 10, citing *Cent. Motors Corp. v. Pepper Pike*, 73 Ohio St.3d 581, 584 (1995).

### B. Analysis

{¶ 10} At the October 2025 hearing, Petitioner was required to show by a preponderance of the evidence that, as relevant here, Respondent committed an act of "domestic violence" as defined in R.C. 3113.31(A)(1)(a). *See, e.g., T.S.*, 2018-Ohio-4987, at ¶ 18 (10th Dist.), citing *Fleckner v. Fleckner*, 2008-Ohio-4000, ¶ 17 (10th Dist.), citing *Felton*, 79 Ohio St.3d at paragraph two of the syllabus. There is no dispute that Petitioner, as Respondent's wife and the mother of their four minor children, constituted a "family or household member" as defined in R.C. 3113.31(A)(3). At issue was whether Petitioner's evidence of domestic violence supported the issuance of a DVCPO.

{¶ 11} Following the presentation of evidence and testimony at the full hearing, the trial court granted Petitioner's petition for a DVCPO against Respondent based on its finding that "Petitioner's allegation[s] of domestic violence as indicated within the petition are found to be true by a preponderance of the evidence. Petitioner is afraid of further domestic violence from the Respondent." (Oct. 7, 2025 Order at 2.) The trial court further found Petitioner was "in immediate and present danger of domestic violence." (Oct. 7, 2025 Order at 2.) The court made additional findings in support of its decision to issue a DVCPO on a separate page attached to the completed DVCPO Form 10.01-I.

{¶ 12} In its attached findings, the trial court found Petitioner to be "credible in her description of physical abuse which occurred throughout her marriage from the Respondent since at least 2016 including incidents of [him] grabbing her by her arm and slamming [her] against the wall while she was holding their infant son." (Oct. 7, 2025 Additional Findings of Fact at ¶ 4.) The court further found Petitioner's testimony that Respondent "told her never to touch him again 'or he would shoot her' " to be credible. (Additional Findings of Fact at ¶ 4.) While noting criminal charges had not been filed against Respondent "following any incidents," the trial court nonetheless found Petitioner

credible when she testified about Respondent physically abusing her in connection with her filing for divorce in 2016 (*see* Hearing Ex. 7)—which she voluntarily withdrew a few months later—and threatening her with future physical harm if she ever sought to divorce him again. (*See* Additional Findings of Fact at ¶ 5-6.) Although Petitioner has continued to reside with Respondent following incidents of domestic violence, the trial court found Petitioner credibly testified about not knowing what to do in her situation on account of being isolated, intimidated, and in fear of Respondent. (*See* Additional Findings of Fact at ¶ 8.) The trial court further found Petitioner's testimony credible about a range of abuse she described, including "stripping," "beatings with a leather belt," "forced anal sex against her consent," an incident that resulted in "bruising on her arms," "efforts to isolate her from family and friends," constant contact with her while she is at work, "control of her social media accounts," and "tracking her on her cell phone." (Additional Findings of Fact at ¶ 5, 7.) For these reasons, the trial court found a DVCPO "is necessary to protect Petitioner from further domestic violence during the pendency of a divorce filing." (Additional Findings of Fact at ¶ 9.) And, as noted above, Petitioner ultimately filed for divorce in January 2026.

{¶ 13} Regarding their minor children, consistent with Petitioner's requests during the hearing, the trial court found no evidence to suggest Respondent was "currently a threat to cause physical harm or domestic violence" to them and noted Petitioner would not be seeking sole custody of them in forthcoming divorce proceedings. (*See* Additional Findings of Fact at ¶ 10.)

{¶ 14} Based on these findings, the trial court imposed a protection order against Respondent for the protection of Petitioner, which is to remain in effect until January 31, 2027. In his sole assignment of error, Respondent contends the trial court erred in finding Petitioner presented "sufficient, credible evidence" to show Respondent posed "an imminent and present danger" to Petitioner. (Appellant's Brief at 12-13.) However, we find no merit to Respondent's contention that the trial court erred in issuing the DVCPO.

{¶ 15} The trial court found Petitioner credibly testified about multiple instances of domestic violence, as defined in R.C. 3113.31(A)(1)(a)(i), by "[a]ttempting to cause or recklessly causing" bodily injury to Petitioner. And, on review of the record, we find the record supports this determination. In addition to testifying about the physical injuries she

sustained at the hands of Respondent (*see, e.g.*, Tr. Vol. II at 23-38), Petitioner provided the court with photographs of her injuries from May 2025 (Hearing Ex. 1; Hearing Ex. 2; Tr. Vol. II at 30, 32-33) and a police report from a 2016 incident of domestic violence. (Hearing Ex. 6; Tr. Vol. II at 37-38.) This finding alone was sufficient to support the court's decision to issue the DVCPO.

{¶ 16} To the extent Respondent takes issue with the absence of evidence showing Respondent placed Petitioner "in fear of imminent serious physical harm" by the "threat of force," we do not find it compelling. This is because the trial court determined Respondent committed "domestic violence" by attempting to cause or recklessly causing bodily injury to Petitioner. *See, e.g.*, *C.A.P. v. M.D.P.*, 2021-Ohio-3030, ¶ 27 (8th Dist.), citing *Caramico v. Caramico*, 2015-Ohio-4232, ¶ 27 (12th Dist.). To issue the DVCPO, the trial court was only required to find Respondent engaged in one of the "domestic violence" acts defined in R.C. 3113.31(A)(1)(a).

{¶ 17} Moreover, the trial court also found Petitioner credibly testified about Respondent engaging in a pattern of conduct that knowingly caused her to believe he would cause physical harm and mental distress to her. This included a history of tracking her phone, isolating her from her family and friends, calling her at work to verify she is still there, deleting her personal email and social media accounts, and causing physical injury to her on multiple instances. (*See* Additional Findings of Fact at ¶ 4-8. *See, e.g.*, Tr. Vol. II at 23-38.) Such conduct satisfies the elements needed to prove menacing by stalking as a subset of domestic violence. *See* R.C. 3113.31(A)(1)(a)(ii); R.C. 2903.211(A). The menacing by stalking statute only required Petitioner to show Respondent engaged in a pattern of conduct that knowingly caused Petitioner "to believe that [he] will cause physical harm" or "mental distress" to her. R.C. 2903.211(A). *See also Z.J. v. R.M.*, 2025-Ohio-5662, ¶ 1-3.

{¶ 18} Despite his assignment of error suggesting otherwise, Respondent's primary contention on appeal is that the trial court abused its discretion in granting Petitioner's DVCPO petition because Petitioner was not a credible witness. We find Respondent's arguments unavailing, for the following reasons.

{¶ 19} Respondent's principal argument is that Petitioner's testimony about "a decade of alleged physical and mental abuse" was "markedly inconsistent with all attendant facts and circumstances." (Appellant's Brief at 16-17.) Respondent argues the documentary

evidence Petitioner presented at the October 2025 hearing to corroborate her claims of domestic violence—photographs, police reports, and text messages—did not adequately substantiate her sworn testimony about being physically and mentally harmed by Respondent.[4]  Even if we accepted as true the purported discrepancies Respondent claims existed between Petitioner's testimony and the documents she presented, we are not convinced they render Petitioner an uncredible witness.

{¶ 20} Determinations regarding credibility of witnesses and the weight of testimony are primarily for the trier of fact. *See, e.g.*, *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Morris v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-3803, ¶ 64 (10th Dist.), citing *Watson v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1017, ¶ 31 (10th Dist.), citing *Seasons Coal Co., Inc.*, 10 Ohio St.3d at 80.  This is because the trier of fact is best able "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc.* at 80.  To that end, it is well-established that the finder of fact "may consider conflicting testimony from a witness in determining credibility and the persuasiveness of the account by either discounting or otherwise resolving the discrepancies." *Harris*, 2023-Ohio-3994, at ¶ 41 (10th Dist.), citing *State v. Taylor*, 2015-Ohio-2490, ¶ 34 (10th Dist.), citing *Midstate Educators Credit Union, Inc. v. Werner*, 2008-Ohio-641, ¶ 28 (10th Dist.).  " 'The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact.' " *State v. Petty*, 2017-Ohio-1062, ¶ 63 (10th Dist.), quoting *State v. Mullins*, 2016-Ohio-8347, ¶ 39 (10th Dist.).  *See also State v. Mann*, 2011-Ohio-5286, ¶ 37 (10th Dist.), quoting *State v. Nivens*, 1996 Ohio App. LEXIS 2245, *7 (10th Dist. May 28, 1996) (" 'While [a factfinder] may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' ").

---

[4] Specifically, Respondent notes the 2016 and 2024 police reports did not "corroborate[] any actual offenses of domestic violence." (Appellant's Brief at 17.) He also contends the screenshot of the settings screen of Petitioner's iPhone—which Petitioner claimed showed Respondent was logged into her iCloud account on that phone (*see* Tr. Vol. II at 35-36; Hearing Ex. 4)—"did not reflect any sort of stalking." (Appellant's Brief at 17.) And while conceding the photographs Petitioner presented "may have arguably depicted bruising," Respondent posits "the visible blemishes were inconsistent with [Petitioner's] claim of being gripped around the arm with such force that [she] could then be thrown into a wall." (Appellant's Brief at 17.)

{¶ 21} Given the evidence presented at the hearing showing Respondent's reluctance to accept Petitioner's personal boundaries and his history of resorting to violence during domestic altercations, we find the trial court did not err in concluding Petitioner had a reasonable belief that Respondent would cause her imminent, serious physical harm unless a protection order was instituted. In reaching this conclusion, we reiterate that Respondent's threatening and controlling behaviors first appeared to escalate when Petitioner filed for divorce in 2016. (*Compare* Hearing Ex. 7 (showing Petitioner filed complaint for divorce in August 2016), *with* Hearing Ex. 6 (showing police were called for domestic violence incident in December 2016). *See also* Tr. Vol. II at 22-24.) Petitioner voluntarily dismissed her divorce complaint in October 2016. She testified that after she moved back in with Respondent, she suffered a range of abuse at the hands of Respondent to such an extent that she moved into a women's shelter in December 2016. (*See* Tr. Vol. II at 23-24.) Petitioner also described Respondent's continued controlling behavior and her social isolation ever since 2016, which is typical of abusers when they fear their partner is going to leave them. (*See* Tr. Vol. II at 25-27.)

{¶ 22} Petitioner testified she again brought up divorce with Respondent in June 2025, and Respondent has threatened—and even used—violence against her on multiple occasions since then. (*See* Tr. Vol. II at 21-22, 25-28.) Petitioner explained that based on Respondent's past conduct, recent violence toward her, and threats of further violence if Petitioner attempted to leave him, she believed Respondent would harm her when she filed for divorce (which she ultimately did in January 2026). (*See* Tr. Vol. II at 20-28.) There is no requirement that a petitioner be a victim of further domestic violence incidents to justify the issuance of a full DVCPO. If that were the case, the domestic relations court would be limited to issuing a DVCPO only in those cases where the respondent was found to have violated an earlier ex parte order. That was clearly not the General Assembly's intent when enacting the domestic violence statutes. *See Felton*, 79 Ohio St.3d at 37 ("[t]he General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case").

{¶ 23} As recognized by the Supreme Court of Ohio:

> Women who are divorced or separated are at higher risk of assault than married women. The risk of assault is greatest when a woman leaves or threatens to leave an abusive relationship. Nonfatal violence often escalates once a battered woman attempts to end the relationship. Furthermore, studies in Philadelphia and Chicago revealed that twenty-five percent of women murdered by their male partners were separated or divorced from their assailants. Another twenty-nine percent of women were murdered during the separation or divorce process. State statutes need to protect women and children during and after the break-up of relationships because of their continuing, and often heightened, vulnerability to violence.

(Citations omitted.) *Felton* at 40-41, quoting Klein and Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law*, 21 Hofstra L.Rev. 801, 816 (1993). "These factors are as applicable today as they were in 1997, when the Supreme Court decided *Felton*." *E.A. v. A.A.*, 2024-Ohio-2807, ¶ 55 (8th Dist.), citing *M.D. v. M.D.*, 2018-Ohio-4218, ¶ 94, 100-01 (8th Dist.).  At bottom, we find that none of the minor inconsistences with which Respondent takes issue—including Petitioner's testimony and conduct prior to her filing of the DVCPO petition—appreciably bore on the trial court's determination that Petitioner's testimony credibly proved, by a preponderance of the evidence, Respondent engaged in domestic violence as defined in R.C. 3113.31(A)(1)(a). We likewise find no merit to Respondent's suggestion that Petitioner's testimony about domestic violence committed against her was not credible because she admitted Respondent did not pose any danger to their minor children.  (*See* Appellant's Brief at 17.) Further, we are not persuaded by his claim that Petitioner's testimony about not believing she is "deserving of this" somehow undermined the credibility of Petitioner's testimony about acts of domestic violence committed by Respondent.  (*See* Appellant's Brief at 18, citing Tr. Vol. II at 52.)

{¶ 24} Upon review, we hold that the trial court's findings of fact are supported by competent, credible evidence in the record of domestic violence, as defined in R.C. 3113.31(A)(1).  We have no basis to find the testimony and evidence presented at the October 2025 hearing were insufficient to support the trial court's determination that a DVCPO against Respondent was warranted.  Accordingly, we overrule Respondent's sole assignment of error.

## III. CONCLUSION

{¶ 25} Having overruled Respondent's sole assignment of error, we affirm the October 7, 2025 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations imposing a DVCPO against him for the protection of Petitioner, which remains in effect until January 31, 2027.

*Judgment affirmed.*

DORRIAN, J., concurs.
JAMISON, J., concurring in judgment only.

—————————